UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN

JOHN G. NELSON

        Plaintiff

v.

                        Case No.
                        Hon.

DETROIT TIGERS, INC.

        Defendant

---

**NICHOLAS ROUMEL (P37056)**
**NACHT & ROUMEL, P.C.**
Attorneys for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
*nroumel@nachtlaw.com*

---

### PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, John G. Nelson, states his complaint as follows:

### INTRODUCTION

Mr. Nelson was the Visiting Teams Clubhouse Manager for the Detroit Tigers Baseball Club, when he was abruptly terminated on October 11, 2021 after 33 years of loyal service, beginning as a teenaged batboy in 1979. Of all the clubhouse managers in the major leagues, he was the only person of color. He was replaced by his much younger, white assistant. He alleges race and age discrimination.

## Parties, Jurisdiction, and Venue

1. Plaintiff, John G. Nelson, ("Mr. Nelson") is a resident of Harrison Township, Macomb County, Michigan and a former employee of Defendant.

2. Defendant, Detroit Tigers, Inc., ("Tigers") is an American professional baseball team with principal offices at 2100 Woodward Ave Detroit, MI, 48201-3474, phone number (313) 471-2255.

3. This lawsuit includes claims for violations of the Age Discrimination in Employment Act, 29 USC §§ 621-634; race discrimination, 42 USC § 1981, and race and age discrimination under the Elliott-Larsen Civil Rights Act MCL § 37.2101 *et seq.*

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. 1983 and 28 U.S.C. 1331 (federal question) and 28 U.S.C. 1343 (civil rights jurisdiction), and his state claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. 1391 as the events giving rise to Plaintiff's claims occurred in the Eastern District of Michigan.

6. Mr. Nelson submitted a charge to the Equal Employment Opportunity Commission on or about February 28, 2022, that unfortunately was not docketed by the EEOC until it was resubmitted, effective August 3, 2022. His charge alleged discrimination on the basis of race, color, and age. The charge remains pending.

7. Because it has been more than 60 days since the charge was docketed by the EEOC, Mr. Nelson's Title VII age discrimination claims may be filed in this court pursuant to 29 CFR § 1626.18 (b).

8. Upon receipt of a "Right to Sue" letter, Mr. Nelson intends to amend his complaint to include an additional claim for race discrimination under Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.,

**Factual Allegations**

9. Mr. Nelson began his employment with the Tigers as a batboy as a teenager in 1979. He was an unwaveringly loyal member of the Club. For instance, when he entered the Air Force in 1984, he used his annual 30 day leave to assist the Club with spring training. He continued to work his way up and was eventually named the Visiting Teams Clubhouse Manager, ensuring that teams visiting the Tigers had proper facilities and amenities.

10. Mr. Nelson was the ONLY major league clubhouse manager of color in the entire country when he was terminated, and one of the oldest. His detailed, written performance evaluations over the years were consistently meeting or exceeding expectations, with numerous positive comments.

11. The only exceptions to his uniformly positive performance evaluations were for the 2017 and 2018 baseball seasons. Part of this was based on a Major League Baseball survey that was completed by visiting ball clubs, that noted

3

deficiencies with the facilities and services provided by the Tigers. In his performance evaluations, it was noted that improvement was needed in certain areas, but it was also recognized that much of the criticism was beyond his control, that it was based on substandard facilities that the Tigers afforded to visiting teams compared to other ballparks.

12. These issues were positively addressed in the 2019 evaluation, conducted on March 17, 2020. Mr. Nelson's efforts earned him an outstanding evaluation, as follows:

**Core Values Rating - Exceeds Expectations**
**Performance Rating – Excellent**
**Overall Rating – Excellent**

13. Comments throughout the evaluation document noted that Mr. Nelson had successfully addressed the complaints from the survey and displayed the historical excellence reflected in his previous evaluations over the past decades.

14. No formal evaluation was done for the 2020 or 2021 seasons, but Mr. Nelson had no reason to believe that his job was in jeopardy. He received good feedback from his supervisors and no negative documentation whatsoever.

15. On October 11, 2021, Mr. Nelson was summoned to a meeting with Assistant General Manager Sam Menzin, who met him at the ballpark. Mr. Menzin said this was a "difficult conversation to have" and proceeded to terminate him, to Mr. Nelson's complete surprise. Mr. Menzin told Mr. Nelson that his termination

was based on the 2017-2018 survey results. Mr. Nelson did not understand this rationale, as his subsequent written performance evaluations documented that the survey results were successfully addressed in the following year, and nobody had informed him otherwise.

16. Worse, Mr. Nelson was replaced by a much younger, white assistant that Mr. Nelson had supervised and trained (a white male in his mid 30's who had worked for Mr. Nelson for six or seven years as his assistant).

17. Mr. Nelson has witnessed racial animus in the past, when a young Black batboy was called a "spider monkey" by a white coach in 2017. Mr. Nelson is unaware of any remediation, such as racial sensitivity training, that occurred afterwards.

18. Major League Baseball is becoming increasingly closed to African-American players. Since Jackie Robinson broke the color line in 1947, after a significant increase through about 1973, the percentage of American born Black players dwindled from about 24% to 18%. On opening day, 2022, that number was 7.2%.[1]

---

[1] https://globalsportmatters.com/culture/2021/10/06/major-league-baseball-drain-black-players-darryl-strawberry-bill-lucas-eric-davis/

19. In the 2022 World Series, for the first time since 1950, neither of the two participating teams (the Astros and Phillies) had a single U.S. born Black player on their rosters.[2]

20. The Detroit Tigers have been considered to be "slow" in integrating its team with Black players, according to the Detroit Free Press, not adding an American-born Black player until 1959, twelve years after Jackie Robinson integrated the league.[3] While their present-day roster reflects a diverse team, it reflects the rest of Major League Baseball with most of its players of color being from Latin countries and territories.[4]

21. Former Tiger great Willie Horton was quoted in the Free Press article:

> Horton briefly walked out on the team in 1969 and said the pressure of being Black was one of his reasons.
> "It bugged me early in my career," he said. "If you're Black in the organization, you've got to be just a little better than whites. Not as good, better. It's a hard thing. You get to the point where you feel lost out there."
> However, even at that time, Horton stressed that he held no bitterness toward the Tigers as a franchise.
> "I love the Tigers' organization," he said back then, "but those are the facts."

---

[2] https://sports.yahoo.com/how-did-mlb-get-to-point-where-no-african-american-players-on-a-world-series-roster-isnt-a-surprise-to-many-194640462.html; https://www.si.com/mlb/2022/10/26/world-series-no-us-born-black-players-first-time-since-1950-philadelphia-phillies-houston-astros

[3] https://www.freep.com/story/news/local/detroit-is/2022/02/27/detroit-tigers-black-players-integration-ozzie-virgil/6924142001/

[4] https://www.mlb.com/tigers/roster

## COUNT I
Violation of 42 U.S.C. 1981

21.   42 U.S.C. 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

22.   Defendant terminated Mr. Nelson because of his race, damaging him as alleged herein and below.

## COUNT II
Violation of the Age Discrimination in Employment Act

23.   At all material times, Defendant was an employer, covered by and within the meaning of the Age Discrimination in Employment Act of 1967, 29 U.S.C. 6121 et seq. ("ADEA")

24.   Plaintiff's age was a factor that made a difference in Defendant's decision to terminate Plaintiff's employment.

25.   Defendant's violation of the ADEA has damaged Mr. Nelson as alleged herein and below.

## COUNT III
Race and Age Discrimination
in Violation of the Elliott-Larsen Civil Rights Act
M.C.L. 37.2201 *et seq.*

26. At all relevant times, Plaintiff was an employee and Defendant was an employer covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. 37.2201 *et seq.*

27. Plaintiff was qualified for his position as Visiting Teams Clubhouse Manager.

28. Plaintiff is a member of a protected class because of his race (Black/African-American) and age (58 at the time of termination).

29. Defendant terminated Mr. Nelson because of his race and/or his age.

30. Defendants replaced Plaintiff with a less experienced, much younger white employee.

## Damages

31. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered economic damages, and non-economic damages including reputational harm, emotional distress, mental and physical anguish, humiliation, and embarrassment, and will so suffer in the future.

## Jury Demand

Plaintiff hereby demands a trial by jury on the above causes of action.

## Relief Requested

*W H E R E F O R E*, Plaintiff requests that this Honorable Court grant the following relief:

A. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices;

B. Award Plaintiff appropriate equitable relief;

C. Award Plaintiff compensatory damages;

D. Award Plaintiff exemplary damages;

E. Award Plaintiff punitive damages;

F. Award Plaintiff reasonable attorney fees, costs, and interests; and

G. Award such other relief as this Court deems just and proper.

Respectfully submitted,

**Nacht & Roumel, P.C.**
Attorneys for Plaintiff

*/s/ Nicholas Roumel*

November 21, 2022     Nicholas Roumel (P37056)