UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JOHN G. NELSON,

      Plaintiff,

v.                           CASE NO. 22-cv-12822

DETROIT TIGERS, INC.,        HON. DAVID M. LAWSON

      Defendant.             MAG. JUDGE DAVID R. GRAND

_____

NICHOLAS ROUMEL (P37056)     THOMAS R. PAXTON (P36214)
Nacht & Roumel, P.C.             Ogletree, Deakins, Nash,
*Attorneys for Plaintiff*         Smoak & Stewart, PLLC
501 Avis Drive, Suite 3        *Attorneys for Defendant*
Ann Arbor, MI 48108         34977 Woodward Avenue, Ste. 300
T: (734) 663-7550            Birmingham, MI 48009
nroumel@nachtlaw.com       T: (248) 593-6400
                         thomas.paxton@ogletree.com

_____

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

NOW COMES Defendant Detroit Tigers, Inc. (hereinafter "DTI" or "the Club"), by and through its counsel, Ogletree, Deakins, Nash, Smoak & Stewart, PLLC, and moves this Honorable Court to grant judgment, as a matter of law in its favor, as there is no genuine issue of material fact upon which a reasonable jury could find in favor of Plaintiff.

In support of its Motion, DTI relies on Fed. R. Civ. P. 56 and the facts and authority set forth in the attached Brief in support.  In short, Plaintiff cannot

demonstrate any genuine issue of material fact that DTI's legitimate, non-discriminatory business reason for terminating his employment was pretext because of his race or age and Defendant's attributable reason was for retaliation.

On October 10, 2023, counsel for Defendant sought concurrence with this Motion and said concurrence was denied.

WHEREFORE, Defendant DTI requests that this Honorable Court dismiss this action in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 56, and award any such other relief as the Court deems just and equitable, including an award of costs incurred by Defendant DTI in preparing and filing this Motion.

Respectfully submitted,

s/ Thomas R. Paxton
Thomas R. Paxton (P36214)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, PLLC
*Attorneys for Defendant*
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
T: (248) 593-6400
thomas.paxton@ogletree.com

Dated: October 20, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JOHN G. NELSON,

     Plaintiff,

v.                               CASE NO. 22-cv-12822

DETROIT TIGERS, INC.,           HON. DAVID M. LAWSON

     Defendant.           MAG. JUDGE DAVID R. GRAND

_____

NICHOLAS ROUMEL (P37056)     THOMAS R. PAXTON (P36214)
Nacht & Roumel, P.C.           Ogletree, Deakins, Nash,
*Attorneys for Plaintiff*         Smoak & Stewart, PLLC
501 Avis Drive, Suite 3        *Attorneys for Defendant*
Ann Arbor, MI 48108         34977 Woodward Avenue, Ste. 300
T: (734) 663-7550           Birmingham, MI 48009
nroumel@nachtlaw.com      T: (248) 593-6400
                          thomas.paxton@ogletree.com

_____

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii - v

CONCISE STATEMENT OF ISSUES PRESENTED .......................................... vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. vii

I. INTRODUCTION ........................................................................1

  A. Statement of Facts ...................................................................1

  B. Plaintiff's Tenure with the Tigers ............................................2

   1. Plaintiff Becomes Manager of the Visitors' Clubhouse .................2

   2. MLB Conducts League Wide "Survey" of the Team's Visitors' Clubhouses" ...............................................................6

   3. Defendant is Told Complaints about Tips and Service Continued into 2021 ...............................................................7

II. STANDARD FOR SUMMARY JUDGMENT ............................................9

III. ARGUMENT ...............................................................................11

  A. Age Discrimination .................................................................11

  B. Legitimate Nondiscriminatory Reason ..................................15

  C. Pretext .....................................................................................16

  D. Defendant's "Honest Belief" that Plaintiff had again Failed to Provide the Minimum Supervision of the Services in the Visitors' Clubhouse is Sufficient to Defeat a Prima Facie Case of Age Discrimination .........................................................19

IV. CONCLUSION .............................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242; 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ....................................10

*Blair v. Henry Filters, Inc.*,
  505 F.3d 517 (6th Cir. 2007) ...............................................................................13

*Blizzard v. Marion Technical College*,
  698 F.3d 275 (6th Cir. 2012) ...............................................................................12

*Boyd v. Baeppler*,
  215 F.3d 594 (6th Cir. 2000) ...........................................................................9, 10

*Brocklehurst v. PPG Indus., Inc.*,
  123 F.3d 890 (6th Cir. 1997) ...............................................................................17

*Browning v. Dept. of Army*,
  436 F.3d 692 (6th Cir. 2006) ...............................................................................14

*Butler v. Ohio Power Co.*,
  91 F.3d. 143 (6th Cir. 1996) ................................................................................17

*Carroll v. CMS Energy Corp.*,
  No. 21-11238, 2023 WL 3391955 (E.D. Mich. May 11, 2023) ..........................16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..............................................................................................10

*Chamberlain v. Bissel Inc.*,
  547 F. Supp. 1067 ................................................................................................16

*Figgins v. Adv. Am. Cash Adv. Centers Of MI, Inc*.,
  476 F. Supp. 2d 675 (E.D. Mich. 2007) ..............................................................14

*Geiger v. Tower Auto.*,
  579 F.3d 614 (6th Cir. 2009) ...............................................................................12

*Gorbe v. City of Lathrup Village*,
  356801, 2023 WL 326103 (Mich. App. Jan. 19, 2023)........................................16

*Grant v. Michigan Osteopathic Medical Ctr., Inc.*,
    432 N.W.2d 313 (Mich. App. 1988)..................................................................17

*Hein v. All Am. Plywood Co., Inc*.,
    232 F.3d 482 (6th Cir. 2000) ........................................................................17

*Henson v. Nat'l Aeronautics & Space Admin.*,
    14 F.3d 1143 (6th Cir. 1994) ........................................................................10

*Highland Capital, Inc. v. Franklin Nat'l Bank*,
    350 F.3d 558 (6th Cir. 2003) ........................................................................10

*Howley v. Fed. Express Corp.*,
    682 Fed. Appx. 439 (6th Cir. 2017)..............................................................11

*Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*,
    176 F.3d 921 (6th Cir.1999) .........................................................................12

*LaGrant v. Gulf & W. Mfg. Co., Inc*.,
    748 F.2d 1087 (6th Cir. 1984) ......................................................................17

*Lenning v. Commercial Union Ins. Co.*,
    260 F.3d 574 (6th Cir. 2001) .....................................................................9, 10

*Lytle v. Malady*,
    458 Mich. 153, 579 N.W.2d 906 (1998)........................................................13

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ....................................13

*Miller-Webb v. Genesee County*,
    325593, 2016 WL 1579016 (Mich. App. Apr. 19, 2016)..................................19

*Nizami v. Pfizer, Inc.*,
    107 F. Supp. 2d 791 (E.D. Mich. 2000) ........................................................19

*Peters v. Lincoln Elec. Co.*,
    285 F.3d 456 (6th Cir. 2002) ........................................................................18

*Pierson v. Quad/Graphics Printing Corp*.,
    749 F.3d 530 (6th Cir. 2014) ........................................................................11

*Plumb v. Potter*,
    212 Fed. Appx. 472 (6th Cir. 2007)....................................................12

*Provenzano v. LCI Holdings, Inc.*,
    663 F.3d 806 (6th Cir. 2011) ..........................................................13

*Scheick v. Tecumseh Pub. Sch.*,
    766 F.3d 523 (6th Cir. 2014) ..........................................................12

*Schoonmaker v. Spartan Graphics*,
    595 F.3d 261 (6th Cir. 2010) ..........................................................12

*Shrivastava v. RBS Citizens Bank, N.A.*,
    227 F. Supp. 3d 824 (E.D. Mich. 2017) ...........................................11

*Simpson v. Midland-Ross Corp.*,
    823 F.2d 937 (6th Cir. 1987) ..........................................................18

*Spurlock v. Whitley*,
    79 F. App'x 837 (6th Cir. 2003) ........................................................9

*St. Francis Health Care Centre v. Shalala*,
    205 F.3d 937 (6th Cir. 2000) ..........................................................10

*Swartz v. Berrien Springs Pub. School Dist.*
    2009 WL 4163539 (Mich. App. 2009) ..............................................19

*Tennial v. United Parcel Serv., Inc.*,
    840 F.3d 292 (6th Cir. 2016) ..........................................................18

*Texas Department of Community Affairs v. Burdine*,
    450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).......................13

*Town v. Michigan Bell Tel. Co.*,
    455 Mich. 688, 568 N.W.2d 64 (1997).........................................11, 17

*United States S.E.C. v. Sierra Brokerage Servs., Inc.*,
    712 F.3d 321 (6th Cir. 2013) ............................................................9

*Wichowski v. Gen. Elec. Co.*,
    9 F.3d 111 (6th Cir. 1993) ..............................................................17

**Other Authorities**

42 U.S.C. 1981 ..................................................................................................9

Federal Rule of Civil Procedure 56(a) .........................................................9

## CONCISE STATEMENT OF ISSUES PRESENTED

I.    Should the Court grant summary judgment on Plaintiff's retaliation claims under the Age Discrimination In Employment Act ("ADEA") and The Elliot Larsen Civil Rights Act ("ELCRA") as Plaintiff cannot demonstrate a *Prima Facie* case of disparate treatment because of Plaintiff's age?

Defendant Answers:  Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Blizzard v. Marion Technical College*, 698 F.3d 275 (6th Cir. 2012)

*Town v Mich. Bell Tel. Co.* 455 Mich. 688 (1997)

*Chamberlain v. Bissel Inc.,* 547 F. Supp. 1067 (6th Cir. 1975)

*Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890 (6th Cir. 1997)

## I.   INTRODUCTION

Plaintiff was terminated when after months of notice and opportunity, he was unable to improve the level of service he was to provide to visiting MLB teams in town to play the Detroit Tigers.  There is no evidence to suggest, much less support, any other reason for his termination.  Plaintiff cannot relate any comment or specific action by the Defendant that could suggest an impermissible reason for his termination.  Instead, he relies only on the fact that he is older than the assistant clubhouse manager, who took his place after the termination.  This is not enough to justify trying these claims.

### A.   Statement of Facts

Defendant, Detroit Tigers, Inc. ("DTI" or "the Tigers") is a founding member of the American League of Major League Baseball ("MLB") and one of the most celebrated franchises in all of Major League Baseball.  Plaintiff was originally hired by DTI on March 1, 1988 and was ultimately employed as the Visiting Teams Clubhouse Manager.  He was responsible for providing food and services to the players and coaches of the visiting teams that come to Detroit to play the Tigers.

DTI maintains a robust set of policies and procedures to ensure that all employees understand age and other protected classifications, which are not a proper basis for employment decisions and culture.  DTI maintains two clubhouses in its ballpark.  One for the home team and one for the visiting team members.

1

### B.      Plaintiff's Tenure with the Tigers

Plaintiff was originally hired by the Club with little or no experience in professional sports or sports management.   He initially worked as a part time clubhouse attendant with the Tigers.  He enlisted in the U.S. Air Force and stationed at K.I. Sawyer Air base working in MWR ("Morale Welfare and Recreation") as gym attendant, and supervised access to the base lake and ski hill and supervised bingo nights and tournaments.  (Exhibit A, Plaintiff Dep. pg. 25-26.)   Upon his discharge, he returned to the Tigers and worked in the mailroom and sold bleacher tickets.  (Exhibit A, Plaintiff Dep. pg. 38.)

### 1.  Plaintiff Becomes Manager of the Visitors' Clubhouse

In 1992, Plaintiff began working as the manager of the visitors' clubhouse. (Exhibit A, Plaintiff Dep. Pg. 39.)[1]  As visiting clubhouse manager, the Plaintiff was responsible for the condition and operation of the visiting teams' clubhouse at the Tigers' home ballpark.  (Exhibit A, Plaintiff Dep. Pg. 46-47.)  This included the visiting team locker room, dining area and food service quality, and diversity, as well as the overall experience and service.  (Exhibit A, Plaintiff Dep. Pg. 47.)  Even though Plaintiff was ostensibly under the supervision of Jim Schmakel, Plaintiff did

---

[1] The staff assigned to the visiting clubhouse would not interact with the similar employees assigned to the home clubhouse during the baseball season.  Other than the staff assigned to the visitors' clubhouse, Club personnel do not visit the visitors' clubhouse when the visiting players are there.  (Exhibit D, Menzin Dep. Pg. 51.)

not attend meetings Mr. Schmakel held.  (Exhibit A, Plaintiff Dep. Pg. 96.)[2]

In the years prior to 2016, visiting team players would pay "dues" to the visiting clubhouse manager purportedly to allow him or her to ensure that there was food and services for the visiting players.  (Exhibit A, Plaintiff Dep. Pg. 47.)  As Plaintiff explained in his recent deposition, he would receive $70 from each player and the would arrange and pay for the food and "toiletries" "out of his pocket".  (Exhibit A, Plaintiff Dep. Pg. 48.)  If he could provide food for an amount less than the dues for that game, he would keep it.  (Exhibit A, Plaintiff Dep. Pg. 50.)  With the ratification of the 2017-2021 MLB Players' contract, the obligation to provide food and services for the visiting players fell to the home club.  (Exhibit B.)  This caused Plaintiff concern for his future financial well-being.  (Exhibit A, Plaintiff Dep. Pg. 72, 74; Exhibit C.)

As a member of the MLB, Defendant is bound by various agreements including a "Basic Agreement" with the members' players.  (Exhibit B.)  Portions of this agreement detail the services to be provided by teams to visiting players and coaches.  In 2017 the MLB and the Major League Players Association negotiated a new five year collective bargaining agreement, which dictated the specific standards

---

[2] In the few interactions he had with Mr. Schmakel, Plaintiff admitted that Schmakel never made any comment about his age even though Schmakel was a decade older than the Plaintiff yet ultimately assumed Plaintiff's position.  (Exhibit A, Plaintiff Dep. Pg. 96-97; Exhibit F, Schmakel Dep. Pg. 7, 8.)

for clubhouses and nutrition.  (Exhibit B.)  This Attachment provided that the home team supply the visiting teams these basic services and nutrition.  This eliminated the "dues" system as the home team, not the visiting players, now provided and paid for the food amenities and certain professional services such as chefs and nutritionist services.

Aside from dues, players would often "tip" the visitors' clubhouse staff, especially the young clubhouse attendants.  (Exhibit A, Plaintiff Dep. Pg. 48-49.)  Tips like the excess dues would be kept by Plaintiff.  (Exhibit A, Plaintiff Dep. Pg. 49-51.)  On occasion, players would give the visiting clubhouse manager a single check and say "this is for the guys".  It was expected that the money would be distributed among the visitors' clubhouse staff.  Plaintiff, as manager of the visitors' clubhouse, was responsible to ensure that these "tips" were properly distributed.  *Id.* Tipping was not affected by the new bargaining agreement.[3]  However, often Plaintiff would not distribute the tips without a comment or reminder by his assistant or clubhouse attendants.  This led to concern and animosity among the visitors' clubhouse staff.  (Exhibit G, Ross Dep. Pg. 54.)

About the time of the new contract, apparently anticipating the effect the dues

---

[3] Plaintiff was paid a salary by the Tigers to provide the visiting team clubhouse services.  The dues and tips were over and above that salary.  Plaintiff admits that he did not report the dues or tips received to the Tigers but he kept records for his personal "tax purposes".  (Exhibit A, Plaintiff Dep. Pg. 51, 76.)

elimination would have on his income, many of the staff and the visiting teams noticed a marked disengagement by Plaintiff from his duties.[4]  Visiting players, coaches and the teams' traveling secretaries voiced a considerable amount of complaints reflecting this disengagement.   The visiting teams often expressed concerns about the quality and presentation of food and services by Plaintiff.  They complained about the condition of the clubhouse and its cleanliness.[5]  They almost all remarked that Plaintiff was generally not available.  And Dan Ross, like many others, noticed complaints about the Plaintiff's work ethic.  (Exhibit G, Ross Dep. Pg. 64.)  Yet, most visiting players and staff knew they could look to his assistant clubhouse manager, Dan Ross, for anything they might need or want.

These deficiencies were noted in Plaintiff's annual reviews and Plaintiff was admonished:

> The "changing environment in all Major League Clubhouses regarding food service is going to require patience and extra effort to insure players and front offices receive the type of foods

---

[4] Plaintiff admitted to Mr. Schmakel during his evaluation "that the CBA changes affected your outlook and your fear of the negative financial impact that could occur . . .".  (Exhibit E.)

[5] While the Plaintiff was not responsible for the physical configuration of the Visitors' clubhouse, one would expect that he would have voiced his concerns and those of the other teams to his superiors in hopes that they could arrange alterations of the clubhouse space and physical plant.

necessary to their individual needs." [e]ach Club will most likely have different requests and these must be tended to. "Hiring a chef to assist with this transition is most necessary." (Exhibit H.)

It is clear that Plaintiff had knowledge of and understood what he needed to do to address the changing requirements.

### 2. MLB Conducts League Wide "Survey" of the Team's Visitors' Clubhouses"

Concerns about the quality of services provided by the visitors' clubhouse managers and compliance with the new provisions of the CBA ultimately prompted the MLB to conduct a survey of all visiting clubhouses to obtain an objective appraisal of the condition and operation of the visitors' clubhouses across the country during the 2018 season that included Club surveys and an onsite audit of the teams visiting Clubhouses. (Exhibit C.) The MLB published the results of that survey, which showed DTI at or near bottom of the 30 teams at an overall rank of 28th. *Id*. The survey responses noted the MLB also conducted an actual inspection of the Tigers' facilities and service where they noted deficiencies in both. Specifically, teams commented on both the Plaintiff and his staff's performance. They noted that "[Nelson] doesn't do much to make this a good experience but one of his assistants (Dan Ross) is very accommodating". (Exhibit C.) They included comments from other teams' personnel – including from the Minnesota Twins and Kansas City Royals ("worst in baseball!"); Toronto Blue Jays ("Players dread

coming to Detroit"); Baltimore Orioles; and Tampa Bay Rays ("one of the worst

clubhouse managers").  There has also been several comments expressed regarding

Plaintiff's ability, much less willingness to properly distribute "tips" left by other

teams – even when players specifically directed they be shared among the DTI staff.

Jim Schmakel told Plaintiff of these concerns as reflected in his 2017

performance review of Mr. Nelson:

> [A]s we have discussed, the traveling secretaries had numerous
> negative comments this winter. they touched on cleanliness, overall
> attitude, cooperation with caterers, presentation of catered foods.  more
> than one comment that you had become lazy and were unmotivated.
> one said that this was not the John Nelson that had previously run the
> visiting clubhouse.  a player union rep said he had been told that John
> Nelson was just going thru the motions. . . .  (Exhibit E.)

Other than facilitating an opportunity for some of the staff to obtain a "Serve

Safe" designation (the minimal food handlers' certification available), Plaintiff did

nothing to address the situation.  He just continued to do as he had always done.

(Exhibit A, Plaintiff Dep. Pg. 91.)  Plaintiff remained disengaged, and the negative

comments by the state of the visitors continued.

### 3. Defendant is Told Complaints about Tips and Service Continued into 2021

In the latter part of the 2021 season, Plaintiff's long-time assistant, Dan Ross,

came to the Assistant General Manager, Sam Menzin, and told him of concerns

brought to him by his subordinate clubhouse attendants about Plaintiff's continued

failure to promptly distribute players tips to the clubhouse staff.  (Exhibit D, Menzin Dep. Pg. 44.)  Mr. Ross also told Mr. Menzin of comments he had heard from the visiting teams about Mr. Nelson's "disengagement" and continued poor service. Menzin investigated this information by making direct inquiries to the visiting team managers, who confirmed the continued disappointment in Mr. Nelson's performance.  (Exhibit D, Menzin Dep. Pg. 47.)  Despite the cursory reviews of Plaintiff's performance since 2018, it was clear that there had been no real change in Plaintiff's performance.  Menzin testified "He had three years to improve the quality of the clubhouse, and in my business decision clearly the consistency of the complaints across clubs, the voracity, if that's the right term, of the complaints led me to believe that was not the case, and made the decision to terminate."  (Exhibit D, Menzin Dep. Pg. 48.)  Menzin came to Mr. Nelson and told him that further investigation in his performance indicated that the complaints that were referenced in the 2016 MLB study were still being made and he believed that it was necessary that he be terminated".  (Exhibit D, Menzin Dep. Pg. 48.)

Subsequently, Mr. Nelson filed a charge with the EEOC asserting discrimination on the basis of his race and age.  He filed this suit on February 2, 2022. Subsequently, he has found comparable employment in a graphics production shop at $20/hr., earning an amount similar to his last salary at the Tigers.  Mr.

Menzin appointed Dan Ross as the visiting clubhouse manager.[6]  In a subsequent

reorganization, Mr. Ross became the home clubhouse manager and Jim Schmakel,

(who is in his early seventies), took the visiting clubhouse manager position.

Plaintiff filed this action asserting race and age discrimination under 42

U.S.C. 1981, and the Michigan Elliott Larsen Civil Rights Act ("ELCRA").  Since

that time, the parties have stipulated to dismiss the claims of race discrimination.

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper

when "there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." *United States S.E.C. v. Sierra Brokerage Servs.,

Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of

Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).  "Materiality" is determined by the

substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000).  A fact

is "material" if it "might affect the outcome of the suit." *Lenning v. Commercial

Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001).

The moving party bears the initial burden "of establishing the 'absence of

evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x

837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

---

[6] Dan Ross is in his thirties but unlike the Plaintiff earned a bachelor's degree in Sports Administration and Marketing and has held several similar positions with different teams throughout the league.  (Exhibit G, Ross Dep. Pg. 8.)

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting 477 U.S. at 248). In the present case, the relevant issue is if the termination of John Nelson's employment in October 2021 was motivated by or because of his age.

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). Indeed, the opposing party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252; 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If after sufficient opportunity for discovery, he is unable to meet his burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-

23 (1986).

Plaintiff cannot demonstrate any material relevant facts to support his claims of disparate treatment because of his age or suggest Defendant's legitimate non-discriminatory reasons – his repeated poor performance of his job duties is merely "pretext". Summary judgment as to all the remaining claims is therefore appropriate.

## III.   ARGUMENT

Plaintiff's remaining claims in his complaint allege violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §6121 *et seq.* and the Michigan Elliot Larsen Civil Rights Act ("ELCRA") M.C.L. §37.2201 *et seq*. Plaintiff does not assert there is any direct evidence of discrimination. Because of the similarity of the law developed under both the ADEA and ELCRA, courts often utilize the same law and authority for analysis of dispositive motions.[7]

### A.   Age Discrimination

The ADEA like the Michigan statute "forbids an employer 'to discharge ... or otherwise discriminate against any individual ... with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Pierson v. Quad/Graphics Printing Corp*., 749 F.3d 530, 536 (6th Cir. 2014)

---

[7] ELCRA claims are analyzed under the same standards as federal ADEA claims. *Shrivastava v. RBS Citizens Bank, N.A.,* 227 F. Supp. 3d 824, 831 (E.D. Mich. 2017). *Town v. Michigan Bell Tel. Co.,* 455 Mich. 688, 568 N.W.2d 64 (1997). *Howley v. Fed. Express Corp.,* 682 Fed. Appx. 439, 444–45 (6th Cir. 2017).

(quoting 29 U.S.C. § 623(a)(1)).

To proceed towards a trial on the merits, the plaintiff must offer evidence that the employer's adverse action would not have been taken against him *but for* his age. *Blizzard v. Marion Technical College*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). Under the ADEA "it is not sufficient for the plaintiff to show that age was a "motivating factor" in the adverse action; rather, the ADEA's 'because of' language requires that a plaintiff 'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the "*but-for"* cause of the challenged employer decision.'" *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Gross*, 557 U.S. at 169). The burden of persuasion, however, remains on the ADEA plaintiff at all times to demonstrate that age was the "but-for" cause of their employer's adverse action." *Schoonmaker v. Spartan Graphics,* 595 F.3d 261 at 264 (6th Cir. 2010).

A plaintiff may prove his case via direct or circumstantial evidence. *Geiger v. Tower Auto.,* 579 F.3d 614, 620 (6th Cir. 2009). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering– Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999). *Plumb v. Potter*, 212 Fed. Appx. 472, 477 (6th Cir. 2007). Where, as here, there is no direct evidence of age discrimination, courts assess the circumstantial case using the

familiar burden-shifting approach first described in *McDonnell Douglas. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  See also: *Provenzano v. LCI Holdings , Inc.*, 663 F.3d 806 at 818 (6th Cir. 2011); *Lytle v. Malady*, 458 Mich. 153, 172-73, 173 n.19, 579 N.W.2d 906, 914-15, 915 n.19 (1998) (applying the *McDonnell Douglas* analysis for age discrimination cases under ELCRA).

The Plaintiff does not contend that there is direct evidence of either discrimination or retaliation.  (Exhibit A, Plaintiff Dep. Pg. 63, 96, 116, 117; Exhibit F, Schmakel Dep. Pg. 52.)  In the absence of direct evidence of discrimination or retaliation, Title VII claims are subject to the familiar burden-shifting framework described in *McDonnell Douglas, supra*, as modified in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, "the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a *prima facie* case of discrimination." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007).

Once the defendant offers a legitimate reason, then "the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.*  The plaintiff may establish a *prima facie* case under the ADEA by showing that he (1) was at least 40 years old at the time of the alleged discrimination, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone substantially

younger.  *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006).

While Defendant will not challenge the Plaintiff 's ability to prove the first and possibly third elements of the ADEA claim, Plaintiff cannot demonstrate that he was qualified for the job given his repeated and well known failure to perform the basic elements of his job as visiting Clubhouse manager.  See *Figgins v. Adv. Am. Cash Adv. Centers Of MI, Inc*., 476 F. Supp. 2d 675, 689 (E.D. Mich. 2007) quoting *Town v Mich. Bell Tel. Co.* 455 Mich. 688 at 699 (1997) ("An employee is qualified if he was performing his job at a level that met the employer's legitimate expectations.")

Clearly, Plaintiff, who was an experienced employee should have known when was not performing up to his employers expectations was not able to address the concerns identified in the 2017 MLB survey.  Equally clear, Sam Menzin's learning that the same type of complaints were coming from the other teams' managers and players, months after the original complaints, were purportedly addressed by Plaintiff, would demonstrate to even a reasonable juror that Plaintiff was not able to fix the problems.[8]  Plaintiff even admitted that continued complaints by the visiting teams about his providing the required services would be legitimate grounds for his termination.

---

[8] Plaintiff testified that once he was aware of the visiting teams concerns about his service he started to pay ". . . more attention to detail."  (Exhibit A, Plaintiff Dep. Pg. 69.)

In fact, Plaintiff agreed that repetition of the poor service that led to the concerns of the visiting teams and demand for change in his 2017 and 2018 evaluations would be basis for termination:

> "Q.   [I]f the complaints continued, that would have been grounds for terminating you, right?
>
> A.   If they continued?
>
> Q.   Yeah.
>
> A.   Yes."

Exhibit A, Plaintiff Dep. Pg. 99.  See also: Exhibit A, Plaintiff Dep. Pg. 105-106

Plaintiff or his immediate supervisor, who agreed that his behavior noted by the MLB opinions, was not sufficient performance of the duties of the job. Therefore, he was not qualified to do the job and cannot establish a *prima facie* case of age discrimination.

### B.   Legitimate Nondiscriminatory Reason

Plaintiff cannot refute that Sam Menzin was the only one who decided to terminate Plaintiff.  Mr. Menzin has testified that he decided to terminate Plaintiff's employment because his "2018 performance review was subpar, the MLB review was subpar, every team I had spoken to about his performance was extremely subpar, and so that pattern of non-improvement was sufficient for me to make a business decision."  (Exhibit D, Menzin Dep. Pg. 43-44.)  He observed Mr. Nelson:

15

> ". . . had three years to improve the quality of the clubhouse, and
> in my business decision clearly the consistency of the complaints
> across clubs, the voracity, if that's the right term, of the
> complaints led me to believe that was not the case, and made the
> decision to terminate."

*Id.* at 48[9]

### C.    Pretext

Even finding that Plaintiff was "qualified" for his position such that he makes

a prima facie showing of discrimination, he cannot show that Defendant and

specifically, Mr. Menzin's performance-based reasons for termination, were

pretextual.  See *Carroll v. CMS Energy Corp.*, No. 21-11238, 2023 WL 3391955, at

*13 (E.D. Mich. May 11, 2023).

Once a legitimate non-discriminatory reason is proffered, the only way a

plaintiff can defeat summary judgment is by presenting sufficient proof the

articulated legitimate, non-discriminatory reason is pretext.  He may do so (1) by

showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing

that they were not the actual factors motivating the decision, or (3) if they were

factors, by showing that they were jointly insufficient to justify the decision.  *Gorbe*

*v. City of Lathrup Village*, 356801, 2023 WL 326103, at *4 (Mich. App. Jan. 19,

---

[9] In 1982 Judge Miles of the Western District of Michigan noted that management
may legitimately discharge an executive employee because he or she has "burned
out."  *Chamberlain v. Bissel Inc.,* 547 F. Supp. 1067, 1077 citing *Laugesen v.
Anaconda Co.*, 510 F.2d 307 at 313 (6th Cir. 1975).

2023).  Pretext is not established by simple speculation of Plaintiff.  *Wichowski v. Gen. Elec. Co.*, 9 F.3d 111 (6th Cir. 1993) (A plaintiff may not satisfy her burden of proof in an age discrimination case by simply relying upon her own conclusory statements, beliefs, or feelings regarding the employer's allegedly improper motivations.).  *LaGrant v. Gulf & W. Mfg. Co., Inc*., 748 F.2d 1087, 1091 (6th Cir. 1984) (Conclusory assertions of age discrimination are insufficient to establish a prima facie case as a matter of law.)  See also *Grant v. Michigan Osteopathic Medical Ctr., Inc.*, 432 N.W.2d 313, 315 (Mich. App. 1988).  Not being told of the specific reasons for a decision does not equate to pretext.  *Butler v. Ohio Power Co.,* 91 F.3d. 143 (Table) (6th Cir. 1996).

Pretext, cannot be shown by attacking the decision itself.  See *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 898 (6th Cir. 1997) (holding that the soundness of an employment decision may not be challenged as a means of showing pretext); *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 568 N.W.2d 64, 69 (1997) (holding that pretext cannot be shown by demonstrating that the employer's decision was wrong or mistaken).  *Hein v. All Am. Plywood Co., Inc*., 232 F.3d 482, 490 (6th Cir. 2000).

There is no pretext.  Plaintiff has admitted after being asked directly:

> Q.   Are you aware of any information that would suggest that [the complaints     that came from the visiting teams and were in the MLB survey] wasn't the real reason for [Menzin's] decision to terminate your employment?

> A.     No.  (Exhibit A, Plaintiff Dep. Pg. 124.)

Plaintiff may suggest that he would and should have been given another chance to correct his performance even in 2021.  Counsel asked Mr. Menzin the following:

> Q.     Why wouldn't you go to the guy and say, I got all this negative stuff, your job is on the line, you've got a year to fix it?
>
> A.     He had three years to improve the quality of the clubhouse, and in my business decision clearly the consistency of the complaints across clubs, the voracity, if that's the right term, of the complaints led me to believe that was not the case, and made the decision to terminate.  (Exhibit D, Menzin Dep. Pg. 48.)

The fact that Plaintiff may have been replaced by a younger but equally or more qualified person, alone, does not support a claim of age discrimination. *Tennial v. United Parcel Serv., Inc.,* 840 F.3d 292, 306, 305-306 (6th Cir. 2016).  In the present case, a conclusion adverse to Plaintiff could be drawn when eventually Plaintiff's position was filled by Mr. Schmakel, Plaintiff's immediate supervisor, who was much older that the Plaintiff.  (Exhibit F, Schmakel Dep. Pg. 7, 8.)[10]

*Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 470 (6th Cir. 2002) ("[M]ere

---

[10] The Sixth Circuit has found that eventual hiring of a younger replacement only three months after termination "substantially weaken[s]" a *prima facie* case on age discrimination. *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 941 (6th Cir. 1987).

conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." (citation omitted)).

**D.   Defendant's "Honest Belief" that Plaintiff had again Failed to Provide the Minimum Supervision of the Services in the Visitors' Clubhouse is Sufficient to Defeat a Prima Facie Case of Age Discrimination**

What is most striking in this case is that there is nothing that suggests that Plaintiff simply stopped making any effort to fulfill his duties after the change in the players' contract reducing his opportunities to "skim" from the players' dues providing cheaper food. Plaintiff as much as admitted it to Mr. Schmakel in his 2018 evaluation that the MLB report identified many failures consistent with Plaintiff's inattention and lack of desire to provide service. See *Nizami v. Pfizer, Inc.*, 107 F. Supp. 2d 791, 803–804 (E.D. Mich. 2000) (Plaintiff cannot show that that reason for her termination was a pretext when an employer's "honest belief in a proffered nondiscriminatory reason even if this belief cannot be proven true, so long as 'particularized facts' form the basis of the belief."); see also: *Swartz v. Berrien Springs Pub. School Dist.* 2009 WL 4163539 at *5 (Mich. App. 2009); *Miller-Webb v. Genesee County*, 325593, 2016 WL 1579016, at *7 (Mich. App. Apr. 19, 2016).

**IV.   CONCLUSION**

Plaintiff's age discrimination case is supported by nothing but his subjective opinion. He offered no direct evidence of age discrimination. He cannot establish a prima facie case of age discrimination because he was not able to perform the basic

aspects of his job despite his experience and specific instruction to improve his performance.  Plaintiff cannot show any pretext that would suggest Mr. Menzin's decision was based on anything other than legitimate business considerations. Without more, this motion should be granted.

<div style="margin-left: 40%;">

Respectfully submitted,

s/ Thomas R. Paxton
Thomas R. Paxton (P36214)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, PLLC
*Attorneys for Defendant*
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
T: (248) 593-6400
thomas.paxton@ogletree.com

</div>

Dated:  October 20, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2023, I electronically filed the foregoing document with the Clerk of the Court using the Court's e-filing system, which will send notification of such filing to all counsel of record.

<div style="margin-left: 40%;">

s/ Thomas R. Paxton
Thomas R. Paxton (P36214)
Attorneys for Defendant

</div>

58842268.v1-OGLETREE